Scott E. Davis
State Bar No. 016160
SCOTT E. DAVIS, P.C.
8360 E. Raintree Drive, Suite 140
Scottsdale, AZ 85260

Telephone:  (602) 482-4300
Facsimile:   (602) 569-9720
email: davis@scottdavispc.com

Scott M. Harris
State Bar No. 11524
SCOTT M. HARRIS, P.C.
8360 E. Raintree Drive, Suite 140
Scottsdale, AZ 85260

Telephone:  (602) 252-7400
Facsimile:   (602) 795-5610
email: harris@smharrislaw.com

*Attorneys for Plaintiff Susan Murphy*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Susan Murphy,<br><br>             Plaintiff,<br><br>     v.<br><br>United of Omaha Life Insurance Company; Scottsdale Healthcare Corporation; Scottsdale Healthcare Corporation Group Disability Plan,<br><br>             Defendants. | Case No.<br><br>**COMPLAINT** |

Now comes the Plaintiff Susan Murphy (hereinafter referred to as "Plaintiff"), by

and through her attorney, Scott E. Davis, and complaining against the Defendants, she states:

### *Jurisdiction*

1. Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f). Those provisions give the district courts jurisdiction to hear civil actions brought to recover employee benefits. In addition, this action may be brought before this Court pursuant to 28 U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of the United States.

### *Parties*

2. At all times relevant to this action, Plaintiff was a resident of Maricopa County, Arizona.

3. Upon information and belief, Defendant Scottsdale Healthcare Corporation (hereinafter referred to as the "Company") sponsored, administered and purchased a group long-term disability insurance policy which was fully insured by United of Omaha Life Insurance Company (hereinafter referred to as "Mutual of Omaha"). The specific Mutual of Omaha group long-term disability policy is known as Group Policy No.: GUD-9P58 (hereinafter referred to as the "Policy"). The Company's purpose in sponsoring, administering and purchasing the Policy was to provide long-term disability insurance for its employees.

4. Upon information and belief, the Policy was included in and part of an employee benefit plan, specifically named the Scottsdale Healthcare Corporation Disability Plan (hereinafter referred to as the "Plan") which was created to provide the

Company's employees with welfare benefits. At all times relevant hereto, the Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1).

5. Upon information and belief, Mutual of Omaha functioned as the claim administrator of the Policy; however, pursuant to the relevant ERISA regulation, the Company and/or the Plan may not have made a proper delegation or properly vested fiduciary authority or power for claim administration in Mutual of Omaha.

6. Mutual of Omaha operated under a structural conflict of interest in evaluating Plaintiff's long-term disability claim due to the fact that it operated in dual roles as the decision maker with regard to whether Plaintiff was disabled, as well as the payor of benefits.

7. Mutual of Omaha's structural conflict of interest existed in that if it found Plaintiff was disabled, it was then financially liable for the payment of her disability benefits.

8. The Company, Mutual of Omaha and the Plan conduct business within Maricopa County and all events giving rise to this Complaint occurred within Arizona.

*Venue*

9. Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391.

*Nature of the Complaint*

10. Incident to her employment, Plaintiff was a covered employee pursuant to the Plan and the relevant Policy and a "participant" as defined by 29 U.S.C. §1002(7). Plaintiff seeks disability income benefits in the form of "Regular Job" benefits from the Plan and the relevant Policy pursuant to §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B), as well as any other non-disability employee benefits she may be entitled to

1  from the Plan, any other Company Plan, and/or the Company as a result of being found
2  disabled in this action.

3      11.    After working for the Company as a loyal employee in the position of a
4  Respiratory Therapist, Plaintiff became disabled on or about November 18, 2013, and has
5  remained continuously disabled since that date due to serious medical conditions. Plaintiff
6  has remained continuously disabled as that term is defined in the relevant Policy for
7  "Regular Job" disability benefits since the day she became disabled and has not returned to
8  work in any occupation as a result of her serious medical conditions.

9      12.    Following the onset of her disability, Plaintiff filed a claim for short-term
10 disability benefits which was approved and those benefits have been paid and exhausted.

11     13.    Following the exhaustion of her short-term disability claim/benefits, Plaintiff
12 then filed for long-term disability benefits under the relevant Policy which was administered
13 by Mutual of Omaha. Mutual of Omaha made every decision in Plaintiff's long-term
14 disability claim.

15     14.    Upon information and belief, the relevant Mutual of Omaha Policy and
16 definition of disability governing Plaintiff's long-term disability claim is as follows:

> "Disability and Disabled means that because of an Injury or Sickness, a significant change in Your mental or physical functional capacity has occurred in which You are:
>
> - Prevented from performing at least one of the Material Duties of Your Regular Job on a part-time or full-time basis; and
> - Unable to generate Current Earnings which exceed 99% of Your Basic Monthly Earnings due to that same Injury or Sickness.

    15.    In support of her claim for long-term disability benefits, Plaintiff submitted to Mutual of Omaha medical evidence which supported her allegation that she met the "Regular Job" definition of disability as defined in the relevant Policy.

16. Mutual of Omaha approved Plaintiff's long-term disability claim and paid her disability benefits through June 25, 2015, when it terminated Plaintiff's disability claim and benefits without any credible medical documentation supporting its allegation that Plaintiff's medical conditions had improved in a way that would have allowed her to return to her prior occupation with the Company.

17. In a letter dated June 25, 2015, Mutual of Omaha informed Plaintiff that it was terminating her long-term disability benefits beyond June 25, 2015.

18. Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed Mutual of Omaha's June 25, 2015 termination of her benefits and submitted additional medical documentation supporting her appeal and her claim that she was unable to work in her prior occupation with the Company.

19. In support of her appeal, Plaintiff submitted to Mutual of Omaha a Functional Capacity Evaluation report dated August 7, 2015, wherein after a five (5) hour evaluation, a qualified physical therapist concluded among other things that, "…[Plaintiff] does not meet the job description of a respiratory therapist as described in the Scottsdale Healthcare job description."

20. During the administrative review of her claim, Plaintiff applied for, was approved for and is currently receiving Social Security disability benefits through the Social Security Administration (hereinafter referred to as "SSA").

21. Plaintiff informed Mutual of Omaha that her claim for Social Security disability benefits had been approved and submitted to Mutual of Omaha documentation from the SSA which confirmed the approval.

22. Mutual of Omaha never obtained a copy of Plaintiff's SSA claim on its own or asked Plaintiff to obtain and/or submit a copy of her SSA claim to it for its review.

Mutual of Omaha's failure to obtain and consider Plaintiff's SSA claim is unreasonable and one example among many, that it was not intending to, nor interested in, providing Plaintiff with a full and fair review pursuant to ERISA.

23.  The SSA found Plaintiff became disabled from engaging in any gainful occupation which may have existed in the national economy as of July 19, 2015. Plaintiff's evidence was so persuasive that SSA approved her claim without her even needing to attend a hearing before an Administrative Law Judge.

24.  The SSA's definition of disability is more stringent and difficult to meet than the aforementioned definition of disability in the Mutual of Omaha Policy for the first 24 months of disability. Therefore, the SSA's approval of Plaintiff's claim and the fact that SSA has continued to pay her benefits through the present date is relevant evidence for this Court to consider with regard to the unreasonableness of Mutual of Omaha's decision to terminate and deny Plaintiff's claim and benefits.

25.  As part of its review of Plaintiff's claim for long-term disability benefits, Mutual of Omaha obtained a medical records only "paper review" of Plaintiff's claim from a physician named William M. Strassberg, M.D., who is a consulting physician for the University Disability Consortium (hereinafter "UDC"). As the attached interrogatory answers confirm (*See* Exhibit "A" to this Complaint), UDC has a long and extensive business relationship with the disability insurance industry and potentially Mutual of Omaha, by providing the type of medical records reviews as occurred in this case.

26.  Plaintiff alleges that UDC may derive a significant amount of annual revenue from its business relationship with Mutual of Omaha which poses a conflict of interest.

27.  Due to its long business relationship with the disability insurance industry, UDC had no incentive to implement a system or process to regularly and consistently

monitor the independence and impartiality of the medical professionals that it retains to perform the type of reviews that it provided to Mutual of Omaha in Plaintiff's claim.

28. Plaintiff asserts that in the review of her claim and due to UDC's extensive business relationship with the disability insurance industry, Dr. Strassberg was not independent, objective or impartial with regard to the opinions he rendered regarding whether or not she was disabled.

29. Upon information and belief, Plaintiff asserts Dr. Strassberg is frequently retained by and is a long time medical consultant for the disability insurance industry, UDC and/or Mutual of Omaha. As a result, Dr. Strassberg has an incentive to protect his own consulting relationship(s) with the disability insurance industry, UDC and/or Mutual of Omaha by providing medical records only paper reviews, which selectively review, ignore and minimize evidence of disability such as occurred in Plaintiff's claim, in order to provide opinions and report(s) which are favorable to Mutual of Omaha and/or other disability insurance companies, and which supported the denial of Plaintiff's long-term disability claim.

30. Prior to rendering its final denial in Plaintiff's claim, Mutual of Omaha never shared with Plaintiff the medical records only "paper review" authored by Dr. Strassberg so she could respond to the report and perfect her claim. Mutual of Omaha's failure to provide Plaintiff with the opportunity to respond to Dr. Strassberg's report prior to its final administrative denial is an ERISA procedural violation, it also precluded a full and fair review pursuant to ERISA and violates Ninth Circuit case law. On this issue, the Ninth Circuit held in *Salomaa v. Honda Long Term Disability Plan,* 642 F.3d 666, 680 (9th Cir. 2011):

> "The plan evidently based its denial in large part on review of Salomaa's file by two physicians, one for the first denial, ***another for the final denial***. They both wrote

their appraisals for the plan administrator. Yet the plan failed to furnish their letters to Salomaa or his lawyer. The regulation, quoted above, requires an ERISA plan to furnish 'all documents, records, and other information relevant for benefits to the claimant.' A physician's evaluation provided to the plan administrator falls squarely within this disclosure requirement" (emphasis added).

31. In a letter dated September 29, 2015, Mutual of Omaha notified Plaintiff that it had denied her claim for long-term disability benefits under the Policy. In the letter, Mutual of Omaha also notified Plaintiff that she had exhausted her administrative levels of review and could file a civil action lawsuit in federal court pursuant to ERISA.

32. Mutual of Omaha's September 29, 2015 final denial letter is clear evidence that it violated its fiduciary duty and failed to provide a full and fair review, while in the process committing ERISA procedural violations that were specifically enacted to protect individuals such as the Plaintiff. Mutual of Omaha violated ERISA for a number of reasons including but not limited to, completely failing to credit, reference, consider, and/or selectively reviewing and de-emphasizing most, if not all of Plaintiff's reliable evidence which proved that she met the "Regular Job" definition of disability in the Policy.

33. Following the final administrative denial of her claim by Mutual of Omaha, in a letter dated October 28, 2016, in order to engage Mutual of Omaha in a dialogue and to cure the deficiencies it alleged existed in her case, Plaintiff submitted additional medical evidence, including an October 19, 2016 narrative letter from her board certified treating physician, and requested for Mutual of Omaha to reopen her claim and consider the additional evidence.

34. The additional evidence from Plaintiff's treating provider is highly relevant as she confirmed it is her medical opinion among other things that, "…[Plaintiff] is unable to return to work."

35. In a response dated November 3, 2016, Mutual of Omaha informed Plaintiff it was denying her request to reopen her claim and that it would not consider any additional medical documentation as her claim was closed.

36. Plaintiff alleges her October 28, 2016 letter, along with the medical documentation submitted as an attachment thereto, should be part of the Administrative Record and considered as extrinsic evidence by this Court due to Mutual of Omaha's ERISA procedural violation of not engaging her in a dialogue, not disclosing its doctor's report, not providing her with an opportunity to respond to the report and allowing her to perfect/cure her claim.

37. Plaintiff alleges that if Mutual of Omaha had not committed the ERISA procedural violation referenced in paragraph #36, and had instead provided Plaintiff with a full and fair review as required by ERISA and had followed Ninth Circuit case law, she and her medical professionals would have been afforded an opportunity to review and respond to Mutual of Omaha's doctor's report during its administrative review of her claim.

38. In evaluating Plaintiff's claim on appeal, Mutual of Omaha owed her a fiduciary duty and had an obligation pursuant to ERISA to administer it "solely in [her] best interests and other participants" which it failed to do. [1]

---

[1] It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," Firestone, 489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B). *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S. 2008).

39. Mutual of Omaha failed to adequately investigate and failed to engage Plaintiff in a dialogue during the appeal of her claim with regard to what evidence was necessary so Plaintiff could perfect her appeal and claim. Mutual of Omaha's failure to investigate the claim, to engage in this dialogue and to ask for or obtain the evidence it believed was necessary and critical to perfect Plaintiff's claim is an ERISA procedural violation, it also violated Ninth Circuit case law and is evidence she did not receive a full and fair review.

40. Plaintiff asserts Mutual of Omaha provided an unlawful review which was neither full nor fair and violated ERISA, specifically, 29 U.S.C. § 2560.503-1, by failing to adequately investigate her claim because the third party vendors it retained and those vendors' reviewing medical professionals, or any medical professional who reviewed Plaintiff's claim, were not truly independent or impartial; by failing to adequately evaluate and consider the approval and ongoing payment of Plaintiff's SSA claim; by failing to credit Plaintiff's reliable evidence including the Functional Capacity Evaluation she submitted; by failing to obtain an Independent Medical Examination when the Policy allowed for one which raises legitimate questions about the thoroughness and accuracy of its review and denials; by providing one sided reviews of Plaintiff's claim that failed to consider all the evidence submitted by her, that also misconstrued and de-emphasized medical evidence which supported Plaintiff's claim; by disregarding Plaintiff's objective, subjective and self-reported complaint/symptoms which were disabling; by failing to consider all the diagnoses and/or limitations set forth in her medical evidence as well as the impact the combination of those diagnoses and impairments would have on her ability to work; by failing to engage Plaintiff in a dialogue so she could review and respond along with her medical professionals to Dr. Strassberg's report and submit the necessary evidence

to perfect her claim and by failing to consider the impact the side effects from Plaintiff's medications would have on her ability to engage in her occupation with the Company.

41. Plaintiff asserts a reason Mutual of Omaha provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, is due to its conflict of interest that manifested as a result of the dual roles Mutual of Omaha undertook as the decision maker and payor of benefits in her claim.

42. Mutual of Omaha's conflict of interest provided it with a financial incentive to deny Plaintiff's claim.

43. When Mutual of Omaha denied Plaintiff's claim, it saved itself money.

44. Plaintiff is entitled to discovery regarding Mutual of Omaha's aforementioned conflicts of interest.  Plaintiff is also entitled to discovery regarding the conflicts of interest of any third party vendor hired by Mutual of Omaha, including but not limited to UDC, as well as any reviewing medical professional involved in Plaintiff's claim and of *any* individual who reviewed her claim.  The Court may properly weigh and consider extrinsic evidence regarding the nature, extent and effect of *any* conflict of interest and/or ERISA procedural violation which may have impacted or influenced Mutual of Omaha's decision to deny her claim.

45. With regard to whether Plaintiff meets the "Regular Job" definition of disability set forth in the Policy, the Court should review the evidence in Plaintiff's claim *de novo*, because even if the Court concludes the Policy confers discretion, the unlawful violations of ERISA committed by Mutual of Omaha as referenced herein abused any discretion that may have been afforded in the Policy and are so flagrant they justify *de novo* review.

46. As a direct result of Mutual of Omaha's decision to deny Plaintiff's disability claim, she has been injured and suffered damages in the form of lost long-term disability benefits, in addition to other potential non-disability employee benefits she may be entitled to receive through or from the Plan, from any other Company Plan and/or the Company as a result of being found disabled.

47. Plaintiff believes that other potential non-disability employee benefits may include but not be limited to, health and other insurance related coverage or benefits, retirement benefits or a pension, life insurance coverage and/or the waiver of the premium on a life insurance policy providing coverage for her and her family/dependents.

48. Pursuant to 29 U.S.C. §1132, Plaintiff is entitled to recover unpaid disability and non-disability employee benefits, prejudgment interest, reasonable attorney's fees and costs from Defendants.

49. Plaintiff is entitled to prejudgment interest at the legal rate pursuant to A.R.S. §20-462, or at such other rate as is appropriate to compensate her for the losses she has incurred as a result of Defendants' nonpayment of benefits.

WHEREFORE, Plaintiff prays for judgment as follows:

A. For an Order finding that the evidence in Plaintiff's claim is sufficient to prove that she meets the "Regular Job" definition of disability set forth in the relevant Plan and/or Policy and that she is entitled to the remainder of her "Regular Job" benefits, in addition to any other non-disability employee benefits she may be entitled to as a result of that Order, from the date she was first denied all these benefits through the date of judgment with prejudgment interest thereon;

1  B. For an Order directing Defendants to continue paying Plaintiff the
2  aforementioned benefits until such a time as she meets the conditions for the termination of
3  benefits;

4  C. For an Order remanding the case to the Plan and/or Claim Administrator so it
5  can determine, after Plaintiff has had an opportunity to submit evidence, whether she meets
6  the "Any Gainful Occupation" definition of disability set forth in the relevant Plan and/or
7  Policy and is entitled to those benefits, in addition to any other non-disability benefits she
8  may be entitled to in the event of that finding by the Plan Administrator;

9  D. For attorney's fees and costs incurred as a result of prosecuting this suit
10 pursuant to 29 U.S.C. §1132(g); and

11 E. For such other and further relief as the Court deems just and proper.

DATED this 15th day of November, 2016.

SCOTT E. DAVIS. P.C.

By: */s/ Scott E. Davis*
    Scott E. Davis
    Attorney for Plaintiff